**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| TERI REINKEMEYER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| IRONHORSE DENTAL GROUP, LLC | ) | |
| | ) | |
| <u>Serve Registered Agent</u>: | ) | JURY TRIAL DEMANDED |
| Samuel Bowden | ) | |
| 5418 W. 161st Terr. | ) | |
| Stilwell, Kansas 66085 | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiff hereby designates the Federal Court in Kansas City, Kansas as the place of trial.

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Teri Reinkemeyer ("Plaintiff"), by and through the undersigned counsel, and states and alleges the following against Defendant Ironhorse Dental Group, LLC ("**Defendant**").

## <u>NATURE OF THE CLAIM</u>

1.     This action for legal and equitable relief arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA") and Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e *et seq.* ("Title VII").

2.     Plaintiff seeks all remedies from Defendant that are available to her under the ADEA and Title VII, including compensatory and punitive damages, costs, reasonable attorneys' fees, and equitable relief the Court deems warranted.

## PARTIES

3.     Plaintiff Teri Reinkemeyer is, and, at all times relevant to the allegations in this Complaint was, a resident and citizen of the State of Kansas.

4.     At all times relevant to the allegations set forth herein, Plaintiff was employed by Defendant.

5.     Upon information and belief, Defendant is a limited liability company organized in and doing business in the State of Kansas, including at the location where Plaintiff worked, 5321 151st Street, Leawood, Kansas 66224.

6.     Upon information and belief, Defendant employs more than fifteen (15) persons within the State of Kansas and, at all relevant times herein, was an "employer" within the meaning of the ADEA and Title VII.

7.     Defendant is an entity, and is thus incapable of acting on its own behalf and therefore acts through agents. It is liable for the conduct of its agents, including but not limited to the individuals named herein, acting within the course and scope of their employment and/or agency, its own negligence, the acts of its employees and/or agents which it ratifies, injuries incurred by employees and/or agents' performance of its non-delegable duties, and acts its employees and/or agents take by virtue of their agency or employment with Defendant.

8.     Furthermore, during all times relevant to this Complaint, Dr. Rand was an owner/manager of Defendant and acting directly in the interests of Defendant.

9.     Because Dr. Rand was an agent, servant, proxy, alter-ego, and/or employee of Defendant and was acting in the course and scope of his agency and/or employment at all times relevant to the allegations in this Complaint, Defendant is liable for his acts.

10.     At all times mentioned herein, each of Defendant's employees referenced in this Complaint were the agents, servants, and employees of Defendant who were all acting within the course and scope of their employment and/or agency with Defendant.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal laws: the ADEA and Title VII.

12.     Jurisdiction is proper over Defendant because it transacted business in the State of Kansas, and the discriminatory and wrongful acts alleged herein occurred in the State of Kansas.

13.     Venue is proper in this Court as all or a substantial part of the alleged acts, omissions and occurrences giving rise to the claims asserted occurred in Overland Park, Kansas, at Defendant's office location where Plaintiff worked, 5321 151st Street, Leawood, Kansas 66224.

## CONDITIONS PRECEDENT

14.     **On or about October 9, 2019,** Plaintiff submitted a Charge of Discrimination ("Charge") regarding employment discrimination and retaliation to the Equal Employment Opportunity Commission ("EEOC"). The EEOC assigned No. 563-2020-00089 to the Charge. A true and correct copy of the Charge is attached hereto as **Exhibit A** and incorporated herein by reference.

15.     **On or about July 17, 2020**, the EEOC issued a Notice of Right to Sue concerning Charge No. 563-2020-00089.  A true and accurate copy of the Right to Sue Notice is attached hereto as **Exhibit B** and is incorporated herein by reference.

16.     This action has been timely filed with this Court, and Plaintiff has met all conditions precedent to filing this action.

## FACTUAL ALLEGATIONS

17.     Plaintiff was employed at Ironhorse Dental Group LLC for approximately 14 years, until her wrongful termination in July 2019.

18.     Plaintiff is a 57 year-old, Caucasian female.

19.     Plaintiff worked as a dental assistant and scaler for Defendant.

20.     Plaintiff was trained to handle most office responsibilities, including but not limited to cleaning teeth, assisting with dental procedures, assisting with orthodontic procedures, assisting with implant procedures, handling lab work, and managing front desk duties.

21.     Plaintiff performed her job duties as expected and was a very good employee.

22.     Dr. Rand Bowden ("Dr. Rand") and his wife, Dr. Laura Bowden ("Dr. Laura") co-own the Ironhorse Dental practice with an office in Leawood, Kansas, and another in Louisburg, Kansas. They run orthodontic and adult and pediatric dentistry practices out of their Leawood and Louisburg, Kansas offices.

23.     Dr. Rand and Dr. Laura employed and supervised approximately twenty employees, including dentists and staff, across their two office locations.

24.     Plaintiff was subjected to sexual harassment and/or a hostile work environment based on sex continuously throughout her employment with Defendant.

25.     Dr. Rand and his wife Dr. Laura are admitted "swingers."

26.     Throughout Plaintiff's employment, Dr. Rand would routinely make inappropriate sex-based comments in the office around colleagues and patients alike.

27.     Plaintiff would not engage with Dr. Rand in his discriminatory sex-based commentary, and would often say his comments were "not right," pretend to ignore the upsetting comments, and/or walk away if possible.

28.     Approximately during the summer of 2018, the sexual harassment and/or hostile work environment to which Plaintiff was subjected became even more severe and pervasive.

29.     In approximately March or April 2019, at an office outing at a winery, Dr. Laura kissed one of the younger employees and Dr. Rand was later seen groping the same employee.

30.     Dr. Rand also told another younger employee that she was making him "hard."

31.     That employee approached Plaintiff and other co-workers to disclose what Dr. Rand had said to her. Plaintiff suggested they leave the function, and Plaintiff left at that time.

32.     The next morning, Plaintiff's co-workers told her that a group of employees, along with Drs. Rand and Laura, left the winery and proceeded to a bar, where Dr. Rand inappropriately touched that same employee in several private areas of her body on the dance floor at the bar.

33.     On a different occasion, Dr. Rand showed naked pictures of himself to another employee.

34.     Dr. Rand also openly displayed on his desk a picture of a woman wearing undergarments, and told one of Plaintiff's co-workers that he likes "[his] women" to be "thick" like the woman in the picture.

35.     In approximately spring 2019, Plaintiff assisted Dr. Rand with fillings on a patient whom Plaintiff understood to be a friend of Drs. Rand and Laura. Dr. Rand and the patient were interacting in a way that made them seem intimately familiar. At one point, the patient began talking with Dr. Rand about her husband's penis and the two laughed. Plaintiff felt highly uncomfortable while assisting Dr. Rand under the circumstances.

36.     After the appointment, Plaintiff asked the office manager not to schedule her to assist Dr. Rand anymore because she felt so uncomfortable during the interaction.

37.     However, the office manager continued to schedule Plaintiff to assist Dr. Rand

despite her request.

38.     Thereafter, in spring 2019, a patient came in to see Dr. Rand for a dental exam. After Plaintiff cleaned the patient's teeth, Plaintiff went to Dr. Rand's office to explain that the patient requested to see him, specifically. Dr. Rand said, jokingly, "That's too bad, tell your patient that I'm too busy." Plaintiff responded, also jokingly, "I'll let the patient know." Dr. Rand then replied, "You better not, or I will punch you in your vagina!" Plaintiff was offended and embarrassed by the very unexpected and unwelcome sex-based comment from her boss.

39.     Plaintiff was also subjected to age discrimination by Dr. Rand, in particular since the beginning of summer 2018, although Dr. Rand made several public discriminatory comments about Plaintiff's age, both before and since then.

40.     For example, in August 2017, Plaintiff had a surgery and was out of the office for approximately six weeks. During Plaintiff's absence, Dr. Rand was telling her younger co-workers that he thought it was a good thing she would be out for a while because she is "old" and "getting up there" and he "can't teach an old dog new tricks." Dr. Rand further told Plaintiff's co-worker that he intended to cut back Plaintiff's hours.

41.     Beginning in January 2019, Defendant assigned Plaintiff to assist in its Louisburg office several times per month.

42.     Plaintiff, who lived a few minutes away from Defendant's Leawood office, then traveled to Louisburg approximately five to seven times each month.

43.     On information and belief, Dr. Rand assigned Plaintiff to the Louisburg office with the hope that she would become frustrated and quit.

44.     Dr. Rand seemed to prefer working with younger workers in the Leawood office. When Plaintiff would work in Louisburg, Dr. Rand typically remained in Leawood. When Plaintiff

worked in Leawood, Dr. Rand would sometimes travel to Louisburg.

45.    In the spring of 2019, during the office's morning preparation routine, Dr. Rand played music very loudly. When patients were beginning to arrive, Plaintiff told him that the music was too loud. Dr. Rand publicly embarrassed Plaintiff by yelling at her, "How f----ing old are you? You think the music is too loud? You are so old!" in the presence of employees.

46.    In the summer of 2019, Dr. Rand told two of Plaintiff's co-workers that she was an "old dinosaur" and further commented "out with the old and in with the new."

47.    Dr. Rand also said to another employee that Plaintiff's "time [was] coming to an end at the office" and he was going to fire Plaintiff due to her age.

48.    While interviewing a candidate for an opening in the office, Dr. Rand mentioned to the interviewee that he was planning to get rid of Plaintiff because he thought she was an "old dinosaur."

49.    On July 18, 2019, Plaintiff had her performance review meeting with Dr. Rand.

50.    Dr. Rand begin the review by telling Plaintiff that she was doing a great job, and that all the patients and employees loved her.

51.    He also said that Plaintiff was meeting all three of his desired attributes, because she was "humble, hungry, and smart."

52.    He then requested that Plaintiff work a reduced schedule of two weeks on and two weeks off per month.

53.    Dr. Rand told Plaintiff that he was losing money because his Louisburg office and the pediatric practice were not doing well.

54.    He also told Plaintiff that if she would not agree to the reduced schedule, he would have to fire Cindy Chu, another employee who was assigned to the pediatric business.

55.     Dr. Rand told Plaintiff that Ms. Chu was allegedly "chasing away good employees, and making coworkers and patients mad" and would have to be fired.

56.     Plaintiff was aware that Ms. Chu was a single mother and did not wish to impact Ms. Chu's employment.

57.     Plaintiff therefore asked if she could have some time to speak with her husband about the proposed schedule change because it would impact their family's finances. Dr. Rand said that she could.

58.     Plaintiff explained to Dr. Rand that she would be in New Orleans for the weekend with her husband and would talk with him then. Dr. Rand then volunteered that he and Dr. Laura would be traveling to New Orleans the following weekend to meet their "swinger friends."

59.     Dr. Rand then began telling Plaintiff, during her performance review meeting, how he and his wife enjoy the "swinging lifestyle."

60.     He talked about how "freeing" it felt to go to "clothing optional" resorts, where he and his wife would meet many interesting people of "all shapes and sizes."

61.     Dr. Rand then asked Plaintiff if she knew what the term "Hot Housewives" meant. When Plaintiff told him she did not, Dr. Rand began to explain the term refers to "when older men 'who can't get it up anymore' marry younger women and hire younger men to have sex with their wives while they watch."

62.     Plaintiff felt extremely uncomfortable and offended by Dr. Rand's unsolicited and unwelcome sex-based comments and glanced at her watch, wondering when the sexually harassing comments would cease and the meeting could conclude.

63.     After Plaintiff discussed Dr. Rand's proposed schedule transition with her husband, Plaintiff sent Dr. Rand a text asking if he would consider having Plaintiff work three weeks each

month, with one week off.

64.     On July 19, 2019, while Plaintiff was out of town on vacation, Dr. Rand replied to Plaintiff's text by communicating his decision to terminate her employment.

65.     Plaintiff was shocked by her sudden termination because she had simply asked Dr. Rand to consider an alternative proposal for her work schedule.

66.     Dr. Rand had not previously given any indication that Plaintiff would be fired if she did not agree to his initial proposal of working twice per week.

67.     Conversely, Dr. Rand only suggested that he was contemplating firing Ms. Chu.

68.     Dr. Rand's stated reason for Plaintiff's termination was that he needed Plaintiff to work two weeks each month, and therefore he must let her go.

69.     However, on information and belief, the true reason for Plaintiff's termination of employment was on the basis of her age.

70.     Following Plaintiff's termination, Ms. Chu remained employed.

71.     As a result of Defendant's discriminatory and harassing actions on the basis of Plaintiff's age and sex, Plaintiff has suffered and will continue to suffer lost wages and emotional distress.

### COUNT I
**Title VII Sex Discrimination & Sexual Harassment**
**(Hostile Work Environment)**
**(42 U.S.C. § 2000e *et seq.*)**

72.     Plaintiff incorporates by reference the allegations contained in every other paragraph as though fully set forth herein.

73.     During the course and scope of Plaintiff's employment, Defendant's representatives, including but not limited to Dr. Rand, while acting within the course and scope of their employment, engaged in a pattern and practice of intentional discrimination of Plaintiff based

on her female sex, in violation of Title VII.

74.     The harassment and discrimination to which Defendant subjected Plaintiff was sufficiently severe and pervasive that it had the purpose and effect of unreasonably interfering with the terms, conditions, compensation, and privileges of Plaintiff's employment, and creating an intimidating, hostile and offensive working environment for Plaintiff.

75.     The discriminatory and harassing conduct to which Plaintiff was subjected was based on her female sex.

76.     The sex-based discriminatory and harassing conduct described herein offended Plaintiff, and would have objectively offended a reasonable person of the same sex in Plaintiff's position.

77.     Management-level employees of Defendant, including but not limited to Dr. Rand and Dr. Laura, knew or should have known of the sex discrimination described herein, and failed to implement effective and appropriate procedures to stop and remedy the sex discrimination.

78.     Dr. Rand, as an owner of Defendant's dental practice and Plaintiff's direct supervisor, personally engaged in sexually harassing conduct that created a hostile work environment for Plaintiff, based on sex.

79.     Plaintiff's sex was a motivating or determining factors in the decision of Defendant's management-level employees, including Dr. Rand, to engage in sexually harassing behavior toward Plaintiff, including but not limited to making offensive, unwelcome, and unprofessional sexually suggestive comments to Plaintiff during her employee review meeting.

80.     The hostile work environment to which Defendant subjected Plaintiff based on sex directly and proximately caused, and will continue to cause, Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

81.     Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

82.     At all times referenced herein, the above-referenced perpetrators were agents, servants and employees of Defendant, and were at all times acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable under the doctrine of *respondeat superior.*

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination as prohibited by 42 U.S.C. 2000 *et seq.*, for an award of compensatory and punitive damages, pre-judgment and post-judgment interest, as provided by law, for her costs expended, for reasonable attorneys' fees and for such other and further relief as this Court deems just and proper, including equitable relief.

## COUNT II
## ADEA – Age Discrimination
### (29 .S.C. § 621, *et seq.*)

83.     Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

84.     Plaintiff, at the age of 57, is within the protected age class.

85.     As a result of her age, Defendant discriminated against and took adverse actions against Plaintiff, in ways including but not limited to:

a) Treating younger employees who were not in the protected age class more favorably than Plaintiff;

b)  Assigning Plaintiff to work in its Louisburg, Kansas office several days each month despite that Plaintiff lived just minutes from Defendant's Leawood, Kansas office;

c)  Proposing to reduce Plaintiff's work schedule to two weeks each month in an effort to encourage Plaintiff to quit and/or in an effort to facilitate her termination; and

d)  Terminating Plaintiff's employment under false alleged pretenses.

86.     Defendant, at all relevant times, had actual and constructive knowledge of the conduct described herein.

87.     Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

88.     Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

89.     The actions and conduct of the above-described perpetrators as set forth herein were intentional, willful, malicious, grossly negligent, reckless, extreme, and outrageous and exhibited a conscious disregard for Plaintiff's rights and the rights of others, and therefore Plaintiff is entitled to liquidated damages.

WHEREFORE Plaintiff prays for judgment against Defendants on Count II of her Complaint for a finding that she has been subjected to discrimination in violation of the ADEA; for reinstatement or an award of front pay; for an award of back pay, including lost bonuses, cost of living increase and other benefits including interest; for an award of compensatory, liquidated and/or punitive damages; pre-judgment and post-judgment interest as provided by law; for her costs herein expensed; reasonable attorneys' fees; and for such other relief as this court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all counts of the Complaint.

Respectfully submitted,

HOLMAN SCHIAVONE, LLC

By:     */s/ Kathleen E. Mannion*
        Anne Schiavone, KS Bar #19669
        Kathleen E. Mannion, KS Bar #25362
        **Holman Schiavone, LLC**
        4600 Madison Avenue, Suite 810
        Kansas City, Missouri 64112
        (816) 283-8738 Telephone
        (816) 283-8739 Facsimile
        aschiavone@hslawllc.com
        kmannion@hslawllc.com

        *ATTORNEYS FOR PLAINTIFF*