UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TERI REINKEMEYER,                    )
                                     )
                Plaintiff,           )
                                     )
v.                                   )   Case No. 20-2514-KHV
                                     )
IRONHORSE DENTAL GROUP, LLC,         )
                                     )
                Defendant.           )

## ORDER

On October 15, 2020, plaintiff Teri Reinkemeyer filed her complaint (ECF No. 1), bringing claims of sex discrimination, sexual harassment, and age discrimination arising from her terminated employment with defendant Ironhorse Dental Group, LLC.  After receiving an extension of time to respond to the complaint, defendant filed the instant motions on December 4, 2020.  The first (ECF No. 8) seeks to strike certain paragraphs of plaintiff's complaint (ECF No. 1) or, in the alternative, seeks a more definite statement. The second motion (ECF No. 10) seeks a more definite statement as to other paragraphs in the complaint.[1]

The relevant allegations in these two motions involve two non-parties, Drs. Rand and Laura Bowden, who are co-owners of the Ironhorse Dental practice and members of the defendant LLC.  Defendant argues these allegations are "immaterial to the issues in this

---

[1] Defendant has filed two motions to address separate sections of the complaint; the court addresses both in this order.

case and are only included because of their scandalous and prejudicial effect."[2]  Plaintiff

opposes the motions.  For the following reasons, the court denies defendant's motions.

Analysis

"[M]otions to strike are generally disfavored."[3]  Still, Federal Rule of Civil

Procedure 12(f) authorizes the court the discretion to strike from a pleading "an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter."  Scandalous

matter is that which improperly casts a derogatory light on someone, often allegations that

"degrade a party's moral character, contain repulsive language, or detract from the dignity

of the court."[4]  The court should generally decline to strike allegations unless they (1) have

no possible relation to the controversy, and (2) may prejudice one of the parties.[5]  Any

doubt as to the utility of the material to be stricken should be resolved against the motion

to strike.[6]

Motions for a more definite statement are "no less disfavored in light of the liberal

_____

[2] ECF No. 9 at 2.

[3] *Constr. Indus. Laborers Pension Fund v. Explosive Contractors, Inc.*, No. 12-2624-EFM, 2013 WL 3984371, at *1 (D. Kan. 2013).

[4] *Dolezal v. Starr Homes, LLC*, No. 2:18-CV-02524, 2019 WL 587959, at *2 (D. Kan. Feb. 13, 2019).

[5] *Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 475 F. Supp. 2d 1092, 1101 (D. Kan. 2007) (citing *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F.Supp.2d 1022, 1029 (D. Kan. 2006)).

[6] *Id.*

discovery provided under the federal rules."[7]  But under Fed. R. Civ. P. 12(e), a party authorized to respond to a pleading may move for a more definite statement if it's "so vague or ambiguous that the party cannot reasonably prepare a response."  A motion for more definite statement should not be granted merely because the pleading lacks detail; rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission.[8]  The decision whether to grant or deny such a motion lies within the sound discretion of the court.[9]

<u>Paragraphs 25, 58-61</u>

These allegations in the complaint read:

25. Dr. Rand and his wife Dr. Laura are admitted "swingers."

58. Plaintiff explained to Dr. Rand that she would be in New Orleans for the weekend with her husband and would talk with him then.  Dr. Rand then volunteered that he and Dr. Laura would be traveling to New Orleans the following weekend to meet their "swinger friends."

59. Dr. Rand then began telling plaintiff, during her performance review meeting, how he and his wife enjoy the "swinging lifestyle."

60. He talked about how "freeing" it felt to go to "clothing optional" resorts, where he and his wife would meet many interesting people of "all shapes and sizes."

61. Dr. Rand then asked plaintiff if she knew what the term "Hot Housewives" meant.  When plaintiff told him that she did not, Dr. Rand began to explain the term refers to "when older men 'who can't get it up

---

[7] *Peterson v. Brownlee*, 314 F. Supp. 2d 1150, 1155–56 (D. Kan. 2004).

[8] *Garrison v. Fastenal Co.*, No. 16-CV-1331-JTM-GLR, 2017 WL 1001189, at *1 (D. Kan. Mar. 15, 2017).

[9] *Id.*

anymore' marry younger women and hire younger men to have sex with their wives while they watch."[10]

Defendant argues the references to the Bowdens' "swinging lifestyle" should be stricken from the complaint.  It contends these allegations are included only to "degrade the moral character"[11] of the Bowdens and "detract from the dignity of the court."[12]   To support that argument, defendant argues plaintiff hasn't sued the Bowdens personally, and the claims in this case don't relate to their personal lives.[13]

Plaintiff first cites the status of the Bowdens as co-owners and supervisors of the defendant LLC, who essentially act as alter egos of the business.[14]   More pointedly, plaintiff argues Rand Bowden "spoke openly and freely *in the workplace* about the couple's 'swinging lifestyle.'"[15]   Plaintiff argues such comments – "voluntarily injected"[16] by Rand Bowden – contributed to the hostile work environment she alleges.

The court finds these factual contentions do not rise to the level of scandalous matter.  The allegations are relevant to plaintiff's claims, particularly in conjunction with the allegations directly following in the complaint – i.e., that plaintiff "felt extremely

---

[10] ECF No. 1.

[11] ECF No. 17 at 2.

[12] *Id.*

[13] ECF No. 9 at 3.

[14] ECF No. 14 at 5.

[15] *Id.* (emphasis in original).

[16] *Id.*

uncomfortable and offended"[17] by the sex-based comments.  In a lawsuit involving a different type of claims, the court might be inclined to find these details only served a salacious purpose.  But the claims here plainly involve allegations about the Bowdens' inappropriate sexual comments and behavior.  Specific details supporting those claims are not immaterial.  The court declines to strike Paragraphs 25 and 58-61.

Paragraphs 29-33

These allegations in the complaint read:

29. In approximately March or April 2019, at an office outing at a winery, Dr. Laura kissed one of the younger employees and Dr. Rand was later seen groping the same employee.

30. Dr. Rand also told another younger employee that she was making him "hard."

31. That employee approached plaintiff and other co-workers to disclose what Dr. Rand had said to her.  Plaintiff suggested that they leave the function, and plaintiff left at the time.

32. The next morning, plaintiff's co-workers told her that a group of employees, along with Drs. Rand and Laura, left the winery and proceeded to a bar, where Dr. Rand inappropriately touched the same employee in several private areas of her body on the dance floor at the bar.

33. On a different occasion, Dr. Rand showed naked pictures of himself to another employee.[18]

Defendant argues these allegations are irrelevant to plaintiff's claims because the

---

[17] ECF No. 1, ¶ 62.

[18] ECF No. 1.

actions weren't directed at plaintiff and occurred outside of the workplace.[19]   Plaintiff points to case law recognizing events occurring outside of work and after business hours may be relevant.[20]   Further, the allegations in these paragraphs involve a work-related function.[21]   Given the claims, the court isn't persuaded by defendant's distinction between comments directed at plaintiff versus comments directed at other employees.   Although the court isn't ruling on the ultimate admissibility of such evidence at this stage, it agrees plaintiff has shown the allegations are relevant to her claims, as they relate to defendant's owners' alleged harassing behavior "with and in the presence of employees."

Defendant argues, in the alternative, for a more definite statement.   Defendant argues the allegations are deficient because they don't specifically identify any of the people involved in the alleged incidents, fail to state whether plaintiff was present, and fail to sufficiently allege facts supporting the hostile work environment claim.[22]   The court disagrees.   The allegations involve the behavior of the Bowdens, so defendant's ability to admit or deny the allegations doesn't depend on plaintiff identifying the individuals by name.   Defendant will have the opportunity to conduct additional discovery concerning the allegations in the complaint.   The court declines to strike Paragraphs 29-33 and denies the motion for a more definite statement.

---

[19] ECF No. 9 at 6.

[20] ECF No. 14 at 7 (citing *Fox v. Pittsburg State Univ.*, 214 F. Supp. 3d 1022, 1027–28 (D. Kan. 2016)).

[21] *Id.* at 8.

[22] ECF No. 9 at 7.

Paragraphs 39-48 and Count II

Defendant has filed a second motion (ECF No. 10) to move for a more definite

statement as to Paragraphs 39-48 of the complaint, which read:

> 39. Plaintiff was also subjected to age discrimination by Dr. Rand, in
> particular since the beginning of summer 2018, although Dr. Rand made
> several public discriminatory comments about plaintiff's age, both before
> and since then.

> 40. For example, in August 2017, plaintiff had a surgery and was out of the
> office for approximately six weeks.  During plaintiff's absence, Dr. Rand was
> telling her younger co-workers that he thought it was a good thing she would
> be out for a while because she is "old" and "getting up there" and he "can't
> teach an old dog new tricks."  Dr. Rand further told plaintiff's co-worker that
> he intended to cut back plaintiff's hours.

> 41. Beginning in January 2019, defendant assigned plaintiff to assist in its
> Louisburg office several times per month.

> 42. Plaintiff, who lived a few minutes away from defendant's Leawood
> office, then traveled to Louisburg approximately five to seven times each
> month.

> 43. On information and belief, Dr. Rand assigned plaintiff to the Louisburg
> office with the hope that she would become frustrated and quit.

> 44. Dr. Rand seemed to prefer working with younger workers in the Leawood
> office.  When plaintiff would work in Louisburg, Dr. Rand typically
> remained in Leawood.  When plaintiff worked in Leawood, Dr. Rand would
> sometimes travel to Louisburg.

> 45. In the spring of 2019, during the office's morning preparation routine,
> Dr. Rand played music very loudly.  When patients were beginning to arrive,
> plaintiff told him that the music was too loud.  Dr. Rand publicly embarrassed
> plaintiff by yelling at her, "How f----ing old are you?  You think the music
> is too loud?  You are so old!" in the presence of employees.

> 46. In the summer of 2019, Dr. Rand told two of plaintiff's co-workers that
> she was an "old dinosaur" and further commented "out with the old and in
> with the new."

47. Dr. Rand also said to another employee that plaintiff's "time [was] coming to an end at the office" and he was going to fire plaintiff due to her age.

48. While interviewing a candidate for an opening in the office, Dr. Rand mentioned to the interviewee that he was planning to get rid of plaintiff because he thought she was an "old dinosaur."

84. Plaintiff, at the age of 57, is within the protected age class.

85. As a result of her age, defendant discriminated against and took adverse actions against plaintiff, in ways including but not limited to:

   a) Treating younger employees who were not in the protected age class more favorably than plaintiff;

   b) Assigning plaintiff to work in its Louisburg, Kansas office several days each month despite that plaintiff lived just minutes from defendant's Leawood, Kansas office;

   c) Proposing to reduce plaintiff's work schedule to two weeks each month in an effort to encourage plaintiff to quit and/or in an effort to facilitate her termination; and

   d) Terminating plaintiff's employment under false alleged pretenses.[23]

Defendant argues these allegations are "so vague and ambiguous that [it] cannot reasonably prepare a response."[24]  More broadly, defendant argues the complaint fails to allege several required elements of the age-discrimination claim, including (1) that plaintiff's work was satisfactory before her termination, (2) that her position was filled by

---

[23] ECF No. 1.

[24] ECF No. 11 at 1.

a younger employee, and (3) that age was a determining factor in the termination.[25] Defendant again argues the allegations are insufficiently pleaded because they fail to identify individuals who were present, fail to identify when the comments were made, and fail to identify when plaintiff became aware of the alleged comments.[26]

Plaintiff contests defendant's characterization of the required pleading elements and asserts the relevant framework is less rigid; she cites a different *prima facie* standard from the  Tenth Circuit.[27]  Plaintiff also points to paragraphs in the complaint (which defendant didn't cite in its motion) that elaborate on the specific discriminatory and age-based comments she alleges occurred.[28]  As to the unnamed individual in these allegations, the court reiterates defendant is able to admit or deny the allegations as to the Bowdens' actions without those names.  Defendant will be able to develop additional facts through discovery.

Defendant argues plaintiff should be required to provide additional facts supporting the claim to provide fair notice.  Defendant represents it's "seeking to avoid a motion to dismiss"[29] by filing this motion.  What's before the court is not a dispositive motion, so it will not decide which party's legal standard ultimately governs the claims.  Under the standard for ruling on a motion for more definite statement, the court considers whether

---

[25] *Id.* at 5.

[26] *Id.* at 6.

[27] ECF No. 15 at 4 (citing *Laul v. Los Alamos Nat'l Laboratories*, 309 F. Supp. 3d 1119, 1144 (D.N.M. 2016), *aff'd*, 714 Fed. Appx. 832 (10th Cir. 2017)).

[28] *Id.* at 7.

[29] ECF No. 11 at 3.

defendant is able to respond with an admission or denial based on what's pleaded.  The allegations plaintiff makes to support her age-discrimination claim are sufficient for defendant to respond.  Many of the allegations involve comments explicitly about plaintiff's age.  The court agrees plaintiff has sufficiently stated a claim for age discrimination for the purposes of defendant's responsive pleading.  Therefore, the court won't require plaintiff to provide a more definite statement as to these allegations.

IT IS THEREFORE ORDERED that defendant's motions (ECF Nos. 8 and 10) are denied.

Dated January 22, 2021, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge